Filed 9/21/20  P. v. Zolorzano CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B295931 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054466) |
| v. | |
| JENNIFER MATILDE ZOLORZANO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Reversed with directions.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Jennifer Matilde Zolorzano pleaded no contest to second degree murder. She thereafter petitioned for resentencing under Senate Bill No. 1437, which amended liability for murderers convicted under the felony-murder rule or the natural and probable consequences doctrine. The trial court summarily denied Zolorzano's petition without appointing counsel for her. Zolorzano appeals. We reverse the order.

## BACKGROUND

In 2011, Zolorzano and Joe Dennis Hickman were charged with the malice aforethought murder of her two-year-old son Deshawn Z. (Pen. Code,[1] § 187, subd. (a); count 1), assault on a child causing death (§ 273ab, subd. (a); count 2), and child abuse (§ 273a, subd. (a); count 3). Zolorzano pleaded no contest to second degree murder and was sentenced to 15 years to life in prison. At the plea hearing, Zolorzano's counsel refused to stipulate to a factual basis for the plea and stated that his client was entering the plea against his advice. After noting that the plea was therefore being made under *People v. West* (1970) 3 Cal.3d 595,[2] the trial court found a factual basis for the plea based on the probation report and preliminary hearing transcripts.[3]

Thereafter, Senate Bill No. 1437 (2017–2018 Reg. Sess.) took effect January 1, 2019. That law amended the felony-

---

[1] All further statutory references are to the Penal Code.

[2] A *West* plea is one in which the defendant does not admit a factual basis for the plea. (*In re Alvernaz* (1992) 2 Cal.4th 924, 932.)

[3] Hickman pleaded guilty to voluntary manslaughter.

murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, all to the end of ensuring that a person's sentence is commensurate with her individual criminal culpability.  Based on the new law, a person convicted of murder under a felony murder or natural and probable consequences theory may petition the sentencing court for vacation of the conviction and resentencing, if certain conditions are met.  (§ 1170.95.)

In 2019, Zolorzano petitioned for resentencing under Senate Bill No. 1437.  In her form petition, Zolorzano checked boxes indicating:  (1) a complaint, information or indictment had been filed against her that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) she pleaded guilty or no contest to first or second degree murder because she believed she could have been convicted of first or second degree murder at trial under one of those doctrines, and (3) she could not now be convicted of first or second degree murder because of changes to sections 188 and 189.  Zolorzano also checked boxes to request that the court appoint counsel for her during the resentencing process.  She did not check a box to indicate she was not the actual killer.

The trial court summarily denied the petition without appointing counsel for Zolorzano because its file suggested she was the actual killer and was not convicted under a felony murder or natural and probable consequences theory.

Senate Bill No. 1437 also added section 1170.95.  "Pursuant to subdivision (a) only individuals who meet three conditions are eligible for relief:  (1) the person must have been charged with murder 'under a theory of felony murder or murder under the

natural and probable consequences doctrine,' (2) convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder 'because of changes to Section 188 or 189 made effective January 1, 2019.' " (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

Courts of Appeal have interpreted section 1170.95 to provide for multiple reviews of a petition by the trial court. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897–898, review granted Aug. 12, 2020, S263219; *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 974; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57–58, review granted Mar. 18, 2020, S260410; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328 (*Verdugo*), review granted Mar. 18, 2020, S260493; but see *People v. Cooper* (Sept. 1, 2020, A156880) __ Cal.App.5th __.) Subdivision (b) of section 1170.95 describes an initial review to determine the facial sufficiency of the petition. (*Verdugo*, at p. 328.) To be facially sufficient, the petition must contain the petitioner's declaration that the petitioner is eligible for relief according to the criteria in subdivision (a), the case number and year of conviction, and whether the petitioner is requesting appointment of counsel. (§ 1170.95, subd. (b)(1).) If the petition is missing any of this information "and cannot be readily ascertained by the court, the court may deny the petition without prejudice." (§ 1170.95, subd. (b)(2).) This initial review amounts essentially to a ministerial review to ensure that the right boxes are checked.

Subdivision (c) of section 1170.95 then describes the next two levels of review. It provides, "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall

4

appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor's response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

The first sentence in subdivision (c) refers to a prebriefing, initial prima facie review to preliminarily determine a petitioner's statutory eligibility for relief as a matter of law.  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329.)  In this step of review, the trial court determines, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief.  (*Id.* at pp. 329–330.)  The court may review the complaint, the information or indictment, the verdict form or the documentation for a negotiated plea, and the abstract of judgment.  (*Ibid.*)  A court of appeal opinion is part of the appellant's record of conviction (*id.* at p. 333), as are jury instructions (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055).  If these documents reveal ineligibility for relief, the trial court can dismiss the petition.  (*Verdugo*, at p. 330.)

But, if the record of conviction does not establish as a matter of law the petitioner's ineligibility for resentencing, evaluation of the petition proceeds to the second prima facie review, in which "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to

5

relief." (*Verdugo, supra*, 44 Cal.App.5th at p. 330.) The trial court must accept as true the petitioner's factual allegations and make a preliminary assessment regarding whether the petitioner would be entitled to relief if the factual allegations were proved. (*Id.* at p. 328.)

We agree with those Courts of Appeal that interpret section 1170.95 to permit a trial court to make an initial determination whether the petitioner may be entitled to relief, without first appointing counsel. The structure and grammar of subdivision (c) of that section "indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; *thereafter*, appointment of counsel for petitioner; then, briefing by the parties." (*Verdugo, supra*, 44 Cal.App.5th at p. 332, italics added; accord, *People v. Lewis, supra*, 43 Cal.App.5th at p. 1140.) As *Verdugo* at pages 328 to 329 noted, to hold otherwise, that counsel must be appointed once a petitioner files a facially sufficient petition, renders subdivision (c) redundant to subdivision (b)(2).

The trial court here summarily denied Zolorzano's petition without appointing her counsel. In doing so, the trial court said that its court file showed that Zolorzano was the actual killer. The trial court did not specify what it reviewed,[4] but the record before us includes the information, the minute orders and reporter's transcripts of Zolorzano's plea and sentencing hearings, Zolorzano's sentencing memorandum to which a social

---

[4] The better practice is for the trial court to state on what parts of the record of conviction it relies in making its decision. (*People v. Tarkington, supra*, 49 Cal.App.5th at p. 910.)

history report is attached, and the probation report. The record does not contain preliminary hearing transcripts.

The Attorney General relies on the probation report and the information to show Zolorzano was the actual killer or a direct aider and abettor, and, as such, ineligible for relief. Per the probation report, deputies responded to a report of a suspicious death. Deshawn Z.'s five-year-old sister told deputies that "daddy" hit Deshawn Z. with a stick because he would not eat his noodles. Deshawn Z. had bruises to his skull, face, and chin; bruise marks and pattern marks on his stomach; and a possible rope mark on his ankle. Zolorzano told detectives she had been abusing her son for four or five months. On the day he died, he would not listen to her, so she whacked him with a stick once on the side of the head and five to six times on his arms and hands. Zolorzano "also stated her boyfriend hit her son twice with the stick before she hit him. She stated Deshawn Z. then stopped breathing and they took him to the hospital." The coroner's report indicated death was a probable homicide due to asphyxia from bruising around Deshawn Z.'s neck.

We will assume without deciding that the probation report is part of the record of conviction upon which a trial court may rely to determine eligibility for resentencing under section 1170.95. (See *People v. Hall* (2019) 39 Cal.App.5th 831 [hearsay in probation report admissible to determine eligibility for Proposition 47 resentencing]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1098 [same].) Even so, the probation report does not show that Zolorzano is statutorily ineligible for resentencing as a matter of law. The probation report refers to Deshawn Z.'s sister's statement that Hickman beat Deshawn Z. and to Zolorzano's statement that Hickman first beat

7

Deshawn Z., and then Deshawn Z. stopped breathing.  Thus, two people beat Deshawn Z.  While the probation report certainly supports a conclusion that Zolorzano was the actual killer or a direct aider and abettor, it does not preclude a theory that she aided and abetted Hickman to commit a target offense the natural and probable consequence of which was murder.  Thus, the probation report is insufficient to defeat Zolorzano's initial prima facie showing.[5]

The Attorney General also argues that Zolorzano was not charged in a way in which she could have been convicted under the felony murder or natural and probable consequences doctrines.  That is true as to the felony-murder doctrine because the only felony other than murder with which Zolorzano was charged was child abuse (§§ 273ab, subd. (a), 273a, subd. (a)).  Child abuse cannot be the basis for second degree felony murder.  (*People v. Chun* (2009) 45 Cal.4th 1172, 1190–1191).  However, as murder was charged generically, the charging document did not preclude the People from proceeding under a natural and probable consequences theory of aiding and abetting.  Thus, the information is similarly insufficient to defeat Zolorzano's initial prima facie showing.

Also of concern is the trial court's reliance on the absence of jury instructions for aiding and abetting, felony murder, or natural and probable consequences.  There would not be *any* jury instructions because Zolorzano pleaded guilty and never faced a

---

[5] That this was a *West* plea does not undermine the existence of any factual basis for the plea, but it heightens our hesitation to rely on just the probation report.

jury.  This calls into question the adequacy of the trial court's initial prima facie review.

For this reason and because the record of conviction before us does not preclude relief as a matter of law, Zolorzano's petition must proceed to the second level of prima facie review in section 1170.95, subdivision (c).  The trial court therefore must appoint counsel to represent Zolorzano, order the prosecutor to file and serve a response, permit Zolorzano to file a reply, and to permit the parties to offer additional evidence and argument in accordance with that section.

## DISPOSITION

The order is reversed.  The trial court is directed to appoint counsel for petitioner Jennifer Matilde Zolorzano and to conduct further proceedings in accordance with Penal Code section 1170.95.

NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.


EGERTON, J.

9